IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | Case No. 25-90186 |
| Debtors. | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE EMPLOYMENT AND RETENTION OF JEFFERIES LLC AS INVESTMENT BANKER, (B) WAIVING AND MODIFYING CERTAIN TIME-KEEPING REQUIREMENTS, AND (C) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this application was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this application was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), respectfully state as follows in support of this application (this "Application"):

**RELIEF REQUESTED**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing the Debtors to retain and employ Jefferies LLC ("Jefferies") as their investment banker, effective as of the Petition Date (as defined below), pursuant to the terms and subject to the conditions of that certain engagement letter, dated as of April 23, 2025 (the "Engagement Letter"),[2] a copy of which is attached as **Exhibit A** hereto; (b) waiving and

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Engagement

1

modifying certain of the time-keeping requirements of rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[3] any guidelines (the "Trustee Guidelines") of the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), and any other guidelines regarding submission and approval of fee applications; and (c) granting related relief. The Engagement Letter describes: (a) the various services that the Debtors seek Jefferies to perform on their behalf during these Chapter 11 Cases; and (b) the terms and conditions of Jefferies' proposed engagement by the Debtors.

2. In support of this Application, the Debtors submit the *Declaration of Michael O'Hara in Support of the Debtors' Application for Entry of an Order (A) Authorizing the Employment and Retention of Jefferies LLC as Investment Banker, (B) Waiving and Modifying Certain Time-Keeping Requirements, and (C) Granting Related Relief* (the "O'Hara Declaration"), which is attached as **Exhibit B** hereto and incorporated herein, and the *Declaration of Dan Siciliano in Support of Chapter 11 Retention Applications and Related Relief* (the "Siciliano Declaration") filed substantially contemporaneously herewith.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The Debtors confirm their consent to the entry of a final order by the Court.

---

Letter.

[3] Unless otherwise stated, "Chapter" and "Section" shall refer to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"). "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure. "Civil Rule" shall refer to the Federal Rules of Civil Procedure. "Bankruptcy Local Rule" or "BLR" shall refer to the Bankruptcy Local Rules for the Southern District of Texas.

2

5. Venue is proper before the Court pursuant to 28 U.S.C. § 1408.

6. The bases for the relief requested herein are §§ 327(a), 328(a), and 1107, Bankruptcy Rules 2014 and 2016(a), and Bankruptcy Local Rules 2014-1 and 9013-1.

## BACKGROUND

7. On July 7, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to operate their business as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. On July 18, 2025, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 98]. To date, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

8. Additional information regarding the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "First Day Declaration") [Docket No. 10].

9. The Debtors seek to retain Jefferies because they require a qualified investment banker to assist the Debtors in connection with, among other things, the arrangement and/or placement of debtor-in-possession financing, analyzing, structuring, negotiating, and effecting a restructuring transaction, and advising and assisting the Debtors in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a material portion of the equity or assets of one or more of the Debtors.

## JEFFERIES' QUALIFICATIONS

10. The Debtors need to retain a qualified investment banker to assist them in the critical tasks associated with guiding the Debtors through the Chapter 11 Cases. The Debtors

3

believe that their retention of an investment banker is necessary and appropriate to enable them to evaluate the financial and economic issues raised by the Debtors' Chapter 11 proceedings, successfully consummate a restructuring, and effectively carry out their duties as debtors in possession.

11. The Debtors selected Jefferies as their investment banker in the Chapter 11 Cases based upon Jefferies' extensive experience in matters involving complex financial restructurings, and its excellent reputation for the services that it has rendered in Chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Jefferies is familiar with the Debtors' corporate and capital structure, management, and business operations and is qualified to advise the Debtors in the Chapter 11 Cases.

12. As set forth in the O'Hara Declaration, Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission and member of the Boston Stock Exchange, the International Stock Exchange, the Financial Industry Regulatory Authority, the Pacific Stock Exchange, the Philadelphia Stock Exchange, and the Securities Investor Protection Corporation. Jefferies, together with its investment banking advisory affiliates, has over 7,000 employees located in more than forty (40) offices around the world. Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.

4

13. Jefferies and its professionals are providing or have provided investment banking, financial advisory, and other services in connection in many complex chapter 11 cases in Texas and around the country.[4]

## SCOPE OF SERVICES

14. Subject to the Court's approval, the Debtors anticipate that Jefferies will perform the following investment banking services, among others, pursuant to the Engagement Letter, as mutually agreed upon by Jefferies and the Debtors, and as appropriate:[5]

    (a) **Restructuring**. Jefferies will:

        (i) provide advice and assistance to the Company in connection with analyzing, structuring, negotiating and effecting, and acting as exclusive investment banker to the Company in connection with any restructuring, reorganization, recapitalization, repayment or material modification of the Company's outstanding indebtedness or obligations (including, without limitation, any preferred equity), however achieved, including, without limitation, through any offer by the Company with respect to any outstanding Company indebtedness or obligations, a solicitation of votes, approvals, or consents giving effect thereto (including with respect to a prepackaged or prenegotiated plan of reorganization or other plan pursuant to chapter 11, Title 11 of the United States Code (the "Bankruptcy Code")), the execution of any agreement giving effect to the same, an offer by any third party to convert, exchange or acquire any outstanding Company indebtedness or obligations, or any similar balance sheet restructuring involving the Company (any of the foregoing, a "Restructuring"); and

        (ii) perform the following investment banking services, among others, for the Company in connection with a Restructuring: (A) becoming familiar with, to the extent Jefferies deems appropriate, and analyzing, the business, operations, properties, financial condition and prospects of the Company; (B) advising the Company on the current state of the "restructuring market";

---

4     In re GO Lab, Inc., Case No. 25-10557 (KBO) (Bankr. D. Del. Mar. 25, 2025); In re Plenty Unlimited Texas LLC, Case No. 25-90105 (CML) (Bankr. S.D. Tex. Mar. 23, 2025); In re Barretts Minerals Inc., Case No. 23-90794 (MI) (Bankr. S.D. Tex. Nov. 21, 2023); In re AppHarvest Products, LLC, Case No. 23-90745 (DRJ) (Bankr. S.D. Tex. Sept. 12, 2023); In re Pipeline Health System, LLC, Case No. 22-90291 (MI) (Bankr. S.D. Tex. Oct. 2, 2022); In re Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.), Case No. 22-90273 (MI) (Bankr. S.D. Tex. Sep. 22, 2022); In re Limetree Bay Services, LLC, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex. Sep. 10, 2021); In re Gulfport Energy Corporation, Case No. 20-35562 (DRJ) (Bankr. S.D. Tex. Jan. 21, 2021).

5     To the extent there is any inconsistency between this summary and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.

(C) assisting and advising the Company in developing a general strategy for accomplishing a Restructuring; (D) assisting and advising the Company in implementing a Restructuring; (E) assisting and advising the Company in evaluating and analyzing a Restructuring, including the value of the securities or debt instruments, if any, that may be issued in any such Restructuring; and (F) rendering such other investment banking services as may from time to time be agreed upon by the Company and Jefferies.

(b) **M&A Transaction**. Furthermore, during the term of the Engagement Letter, and as mutually agreed upon by Jefferies and the Company, Jefferies will provide the Company with financial advice and assistance in connection with a possible sale, disposition or other business transaction or series of transactions involving all or a material portion of the equity or assets of one or more entities comprising the Company, including, for the avoidance of doubt and without limitation, the Funds, whether directly or indirectly and through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock sale, asset sale, asset swap, recapitalization, reorganization, consolidation, amalgamation, spin-off, split-off joint venture, strategic partnership, license, a sale under section 363 of the Bankruptcy Code (including any "credit bid" made pursuant to section 363(k) of the Bankruptcy Code and including under a prepackaged or pre-negotiated plan of reorganization or other plan pursuant to the Bankruptcy Code) or other transaction (any of the foregoing, an "M&A Transaction").

(c) **Financing**. During the term of the Engagement Letter, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will provide the Company with financial advice and assistance in connection with the arrangement and/or placement of any debtor-in-possession financing, whether secured or unsecured, including, without limitation, the issuance of any securities and/or entry into any bank debt and/or other credit facility (any of the foregoing a "DIP Financing" and a DIP Financing, a Restructuring and an M&A Transaction, each and together, a "Transaction"). For the avoidance of doubt, if a DIP Financing is executed in more than one issuance or tranche, each shall be deemed to be a DIP Financing for the purposes of the Engagement Letter.

15. The Debtors do not believe that the services to be rendered by Jefferies will be duplicative of the services performed by any other professional, and Jefferies will work together with the other professionals retained by the Debtors to minimize and avoid duplication of services.

## PROFESSIONAL COMPENSATION AND EXPENSE REIMBURSEMENT

16. As set forth more fully in the Engagement Letter, Jefferies and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee and Expense Structure"):[6]

    (a) **Monthly Fee.** A monthly fee (the "Monthly Fee") equal to $125,000 per month until the termination of the Engagement Letter. The first Monthly Fee shall be payable as of the date of the Engagement Letter and each subsequent Monthly Fee shall be payable on each monthly anniversary thereafter. Commencing with the fourth full Monthly Fee actually paid under the Engagement Letter, an amount equal to 50% of the Monthly Fees actually paid to Jefferies shall be credited once, without duplication, against any Restructuring Fee or M&A Transaction Fee (each as defined below) that subsequently becomes payable to Jefferies under the Engagement Letter.

    (b) **Restructuring Fee.** Promptly upon the consummation of a Restructuring, a fee (a "Restructuring Fee") in an amount equal to $2,500,000.

    (c) **M&A Transaction Fee.** Promptly upon the consummation of an M&A Transaction, a fee (an "M&A Transaction Fee") equal to 2.0% of the Transaction Value of such M&A Transaction; provided, however, to the extent an M&A Transaction solely involves assets of one or more of the Funds, the M&A Transaction Fee payable on account of such M&A Transaction shall be equal to (i) 4.0% of the portion of Transaction Value of such M&A Transaction less than or equal to $10,000,000, plus (ii) 3.0% of the portion of Transaction Value of such M&A Transaction greater than $10,000,000 and less than or equal to $20,000,000, plus (iii) 2.0% of the portion of Transaction Value of such M&A Transaction greater than $20,000,000. It is expressly understood that in the event that more than one M&A Transaction shall occur, a separate M&A Transaction Fee shall be payable in respect of each M&A Transaction. Notwithstanding the foregoing, to the extent an M&A Transaction Fee is calculated based upon the Transaction Value of an M&A Transaction and the Transaction Value of such M&A Transaction includes any contingent consideration or consideration paid in installments, the M&A Transaction Fee allocable to such contingent consideration or installments shall be paid to Jefferies when such contingent consideration or installments is received by the Company, its creditors or other stakeholders.

---

[6] To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

  (d) **DIP Financing Fee.** Promptly upon consummation of a DIP Financing, a fee (a "DIP Financing Fee") equal to 2.0% of the aggregate amount committed in connection with such DIP Financing.

  (e) **Expenses.** In addition to any fees that may be paid to Jefferies under the Engagement Letter, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all out-of-pocket expenses (including ancillary expenses and fees and expenses of its counsel and any other independent experts retained by Jefferies) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated under the Engagement Letter.

17. During the pendency of the Chapter 11 Cases, Jefferies shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

18. The Fee and Expense Structure set forth in the Engagement Letter is reasonable. The Fee and Expense Structure appropriately reflects both the nature of the services to be provided by Jefferies and the fee structures typically utilized by leading investment banking firms of similar stature to Jefferies for comparable engagements, both in and out of court. The Fee and Expense Structure is consistent with Jefferies' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of: (a) industry practice; (b) market rates charged for comparable services both in and out of the chapter 11 context; (c) Jefferies' substantial experience with respect to investment banking services; and (d) the nature and scope of work to be performed by Jefferies in these cases. The Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.

19. Consistent with its ordinary practice and the practice of investment bankers in other Chapter 11 cases whose fee arrangements are not hours-based, Jefferies does not maintain

contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. Given the foregoing, and in light of the fact that Jefferies' compensation is based on fixed fees, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, any order of the Court, or any other guidelines regarding the submission and approval of fee applications, Jefferies' professionals be excused from maintaining time records as set forth in Bankruptcy Rule 2016(a) and the U.S. Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter. Jefferies will nonetheless maintain reasonably detailed summary time records in one-half (1/2) hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

20. Jefferies will maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

## **INDEMNIFICATION**

21. As part of the overall compensation payable to Jefferies under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees, and agents, and any other controlling persons, to the fullest extent lawful, from and against any claims, liabilities, losses, actions, suits, proceedings, third party subpoenas, damages, costs, and expenses, as incurred, related to or arising out of or in connection with Jefferies' services under the Engagement Letter.[7]  Such terms of indemnification, as modified by

---

[7] To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Schedule A to the Engagement Letter, the terms of the Engagement Letter shall control.

9

the Order, reflect the qualifications and limits on such terms that are customary for investment bankers such as Jefferies in Chapter 11 cases.

## JEFFERIES' DISINTERESTEDNESS

22. Jefferies has informed the Debtors that as of the date hereof, except as set forth in the O'Hara Declaration: (a) Jefferies has no connection with the Debtors, their creditors, equity security holders, or other parties in interest in the Chapter 11 Cases; (b) Jefferies does not have or represent any entity having an interest adverse to the interests of the Debtors, their estates, or of any class of creditors or equity security holders; and (c) Jefferies (i) is not a creditor, equity security holder, or an insider of the Debtors, and (ii) is not or was not, within two (2) years before the Petition Date, a director, officer, or employee of any of the Debtors. In addition, none of the Jefferies professionals expected to assist the Debtors in the Chapter 11 Cases are related or connected to any United States Bankruptcy Judge for the Southern District of Texas, the U.S. Trustee, or any person employed by the Office of the U.S. Trustee.

23. During the 90-day period prior to the commencement of the Chapter 11 Cases, Jefferies was paid certain Monthly Fees and expense reimbursements in the ordinary course. Specifically, Jefferies was paid under the Engagement Letter: (i) $125,000.00 on May 12, 2025, on account of the April 2025 Monthly Fee and $25,000 on account of an expense advance; (ii) $125,000.00 on May 29, 2025, on account of the May 2025 Monthly Fee; and (iii) $125,000.00 on June 26, 2025, on account of the June 2025 Monthly Fee and $23,104.68 in reimbursable expenses.

24. The Debtors have been advised that Jefferies has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Cases in accordance with § 504(a) of the Bankruptcy Code. Based on the foregoing,

the Debtors believe that Jefferies is a "disinterested person" as that term is defined in § 101(14) of the Bankuptcy Code and utilized in § 328(c) of the Bankruptcy Code.

## BASIS FOR RELIEF

25. The Debtors seek to retain a qualified investment banker to assist them in the critical tasks associated with guiding them through the Chapter 11 Cases. The Debtors believe that their retention of Jefferies pursuant to §§ 327 and 328(a) of the Bankruptcy Code will enable the Debtors to evaluate the financial and economic issues raised during the Debtors' Chapter 11 Cases, successfully consummate a sale transaction, and effectively carry out their duties as debtors in possession.

26. Section 327(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ one or more attorneys, accountants . . . or other professional person." Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors, with the Court's approval, "may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

27. Given the numerous issues that Jefferies may be required to address in performing its services for the Debtors pursuant to the Engagement Letter, Jefferies' commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature, the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in § 328(a) of the Bankruptcy Code. The Fee and Expense Structure appropriately reflects (a) the nature and scope of Jefferies' services, (b) Jefferies' substantial experience with respect to investment banking services, and (c) the fee structures typically utilized by Jefferies and other investment banks, which do not bill their clients on an hourly basis in bankruptcy or otherwise.

11

28. As set forth above, and notwithstanding approval of the Engagement Letter under § 328(a) of the Bankruptcy Code, Jefferies intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein. Notwithstanding the foregoing, Jefferies agrees that the U.S. Trustee may review Jefferies' compensation under § 330 of the Bankruptcy Code.

29. In light of the foregoing, the retention of Jefferies is in the best interest of the estates, the Debtors' creditors, and all parties in interest in the Chapter 11 Cases. Jefferies has extensive experience in matters involving complex financial restructurings and an excellent reputation for services rendered in Chapter 11 Cases on behalf of debtors and creditor constituencies throughout the United States. The Debtors have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules to support entry of an order authorizing the Debtors to retain and employ Jefferies in the Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

30. The Debtors will provide notice of this Application to the Master Service List pursuant to, and as defined in, the *Order Authorizing the Debtors to (I) Implement Certain Notice Procedures, (II) Redact Certain Personal Identification Information, and (III) Approve the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information* [Docket No. 44].

WHEREFORE, the Debtors request that the Court enter the Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Houston, Texas
Dated: July 25, 2025

/s/ *Jeffrey S. Stein*
Jeffrey S. Stein
Chief Restructuring Officer
Linqto Texas, LLC, and its debtor affiliates

**Certificate of Service**

      I certify that on July 25, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                           */s/ Veronica A. Polnick*
                                           Veronica A. Polnick